**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DVISION**

SHENZHEN JIANKE TECHNOLOGY
CO., LTD. and SHENZHEN
HUIHAIBANG TRADING CO., LTD.,

    Plaintiffs,

    v.

EARTHABLES LTD.,

    Defendant.

Case No. 1:25-cv-801

## COMPLAINT FOR DAMAGES AND FOR DECLARATORY JUDGMENT

COMES NOW, Plaintiff SHENZHEN JIANKE TECHNOLOGY CO., LTD. ("Jianke") and Plaintiff SHENZHEN HUIHAIBANG TRADING CO., LTD. ("HHB") (collectively herein, "Plaintiffs") by and through their counsel, seek declaratory judgment, among other things, against Defendant EARTHABLES LTD., ("Defendant"), and allege based on the information and belief as follows:

### NATURE OF THE ACTION

1.    This is an action for Declaratory Judgment for non-infringement, invalidity and unenforceability of Defendant's U.S. Design Patent Number D1,061,093 S1 (the "D093 Patent"), and for damages resulting from Federal Unfair Competition under Lanham Act Section 43(a), 15 U.S.C § 1125, common law Tortious Interference with Contractual Relations, Intentional Interference with Prospective Economic Advantage, and Unjust Enrichment. Plaintiff seeks declaratory relief, actual damages, an award of attorney's fees and costs, and any other relief that the Court deems just and proper.

2.    A true copy of the D093 Patent is attached hereto as **Exhibit 1**.

## THE PARTIES

3.      Plaintiff JIANKE is a limited company organized under the laws of China with its principal place of business at Room 11G, Building H, Huajun Jiayuan, Huayangnian, Area 83, Haiyu Community, Xin'an Subdistrict, Bao'an District, Shenzhen City, China.

4.      Plaintiff HHB is a limited company organized under the laws of China with its principal place of business at Room 313, Haoye Yayuan, Haotian Community, Xixiang Subdistrict, Bao'an District, Shenzhen CityChina, China.

5.      On information and belief, Defendant, Earthables Ltd., is a company organized under the laws of the United Kingdom with its principal place of business at 24 Holborn Viaduct, International House, London, EC1A 2BN, England, and having a registered office address at PO Box 4385, 12120733: COMPANIES HOUSE DEFAULT ADDRESS, Cardiff, CF14 8LH, England.

## JURISDICTION AND VENUE

6.      This action is brought under, and subject matter jurisdiction of this matter is vested in this Court through, 28 U.S.C. § 1331 (Federal Question Jurisdiction), 1332 (Diversity Jurisdiction), and 1338 (action arising under an Act of Congress relating to patents). This action is also brought under the patent laws of the United States, Title 35 of the United States Code (35 U.S.C. § 1, et seq.), Federal Unfair Competition under Section 43 of the Lanham Act (15 U.S.C. § 1125), and under the Federal Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202).

7.      Jurisdiction is proper as the claim arises under federal law and Defendant, being an entity with its domicile and primary place of business in England, is not subject to any state court's general jurisdiction.

8.      Exercising jurisdiction over Defendant is consistent with the United States Constitution and laws as Defendant knowingly enforces its U.S. patent rights in the United States

and actively participates in patent enforcement procedures through Amazon within the United States

9.      The Court has supplemental jurisdiction over all state and common law claims pursuant to 28 U.S.C. § 1367. The state law claims are integrally related to the federal claims and arise from a common nucleus of operative facts.

10.     Venue is proper in this action under 28 U.S.C. § 1391 because Defendant does business within the state of Virginia, a substantial part of the harm from the events or omissions giving rise to the claims occurred in this District, and because the Defendant is subject to personal jurisdiction in this District.

11.     Virginia contains multiple large Amazon fulfillment centers, which would distribute Plaintiffs' products across the state. Therefore, Defendant's claim of infringement includes transactions that happen on a regular basis within Virginia's jurisdiction.

12.     For the D093 Patent, there is no filed designation with a person designated under 35 U.S.C. § 293. Therefore, jurisdiction and venue are proper in this district pursuant to 35 U.S.C. § 293.

## FACTUAL BACKGROUND

13.     Plaintiffs Jianke and HHB are Amazon Sellers.

14.     Jianke maintains a storefront with Amazon and has an Amazon Seller ID of A3I0IDEKIHZMZ9.  Jianke sells a variety of products including, but not limited to, desktop dividers and other commercial products of like kind.  Amazon.com is the primary sales channel through which Jianke sells its products.

15.     Since its formation, over 99% of Jianke's revenue has come from sales made by and through Amazon.com.

16.     HHB maintains a storefront with Amazon and has an Amazon Seller ID of A2SEX0AD3JE61Q.  HHB sells a variety of products including, but not limited to, desktop dividers and other commercial products of like kind.  Amazon.com is the primary sales channel through which HHB sells its products.

17.    Since its formation, over 99% of HHB's revenue has come from sales made by and through Amazon.com.

18.    The below is an image of products sold by JIANKE's Amazon store and HHB'S Amazon store, but were taken down by Amazon in response to a complaint filed by Defendant in this action against the following Amazon Standard Identification Numbers ("ASIN"):

| Amazon Store | ASINs | Removal Date |
|---|---|---|
| HHB | B0BZ7P8TJ8 | February 24, 2025 |
| | B0D53G3V8H | March 1, 2025 |
| | B0CPPSFDQS | March 1, 2025 |
| | B0CPPV5T6N | March 1, 2025 |
| | B0D53S47TP | March 1, 2025 |
| | B0BZVVLBQY | March 2, 2025 |
| JIANKE | B0CJR2XNKN | February 19, 2025 |
| | BODJQZYWGV | March 1, 2025 |
| | BOCJR4TTDK | March 1, 2025 |

(the "Accused ASINs").

19.    The Accused ASINs are exemplified by the below product, which is the product that was sold by Jianke and HHB until the illegal takedown of the product that occurred on Amazon at the request of Defendant on February 19th, 2025 and has since cause irreparable injury and damage to Plaintiffs' business, sales, customer good will, and reputation on its only major platform through which it operates its business and pays its employees:



(the "Plaintiff Products")

20.    One of the Plaintiff Products includes a product offered on Amazon by HHB as Amazon Standard Identification Number B0BZVVLBQY



*See*    https://www.amazon.com/Classroom-Shields-Privacy-Student-Desks/dp/B0BZVVLBQY/

(removed on March 2) (hereinafter referred to as "Privacy Shields").

21.    According to Amazon.com, the Privacy Shields was first available, i.e., publicly

## Additional Information

| | |
|---|---|
| **ASIN** | B0BZVVLBQY |
| **Customer Reviews** | 5.0 ★★★★★ ˅    3 ratings<br>5.0 out of 5 stars |
| **Best Sellers Rank** | #91,511 in Office Products (See Top 100 in Office Products)<br>#361 in Desk Pads & Blotters |
| **Date First Available** | April 4 2023 |

## Feedback

Would you like to **tell us about a lower price?** ˅

known, used, and/or offered for sale, on Amazon as early as April 4, 2023:
*Id*.

22.    The Plaintiff Products are each nearly identical to a product offered on Amazon by

the Storage Standard store as Amazon Standard Identification Number B0C2YQFW8C:



*See* https://www.amazon.com/22-Pack-Dividers-Students-Easy-Clean/dp/B0C2YQFW8C/ (removed on February 28 and restored back on April 26) (hereinafter referred to as "Storage Study Carrel").

23.    According to Amazon.com, the Storage Study Carrel was first available, i.e., publicly known, used, and/or offered for sale, on Amazon as early as April 19, 2023:

## Additional Information

| | |
|---|---|
| **ASIN** | B0C2YQFW8C |
| **Customer Reviews** | 4.6 ★★★★⯪ ∨    195 ratings<br>4.6 out of 5 stars |
| **Best Sellers Rank** | #6,177 in Office Products (See Top 100 in Office Products)<br>#1 in Office Furniture Partitions |
| **Date First Available** | April 19, 2023 |

*Id.*

24. According to the face of the D093 Patent, the earliest effective filing date of the D093 Patent is December 13, 2023.

25. During prosecution of the D093 Patent, the patent examiner at the United States Patent and Trademark Office ("USPTO") identified the following non-patent literature as reference "U" in the August 12, 2024 Notice of References cited: Earthables: Classroom Privacy Shields for Student Desks – Pack of 20 – Privacy Folders for Students – Test and Desk Dividers – Teacher Supplies for Classroom – 45.5 x 14 inch https://amzn.asia/d/3QA5lrJ. February 9, 2020 (Year: 2020) (the "Earthables reference"). *See* **Exhibit 2**.

26. The patent examiner rejected the pending design patent application over the Earthables reference in an August 12, 2024 Non-final Office Action. *See* **Exhibit 3**.

27.     In response, the inventor filed an October 23, 2024 Affidavit Under 37 C.F.R. § 1.130, making the following declarations under the threat of perjury:

28.     Thus, the Defendant can assert, at best, a disclosure date of "sometime between

3. While the Examiner is correct that the Amazon webpage shows a public release date of February 9, 2020, the listing, as is common on the Amazon platform, has been re-used for the Applicant's new product. The Applicant's new product, embodied in the Patent Application Serial No. 35/519,751, was not released until the third quarter of 2023, i.e., sometime between July to September 2023. A previous and obsolete study carrel product was previously being sold, which is not what is currently shown.

4. I am one of the named inventors on the present application and one of the founders of Eartables Ltd., the current Assignee and Applicant of Patent Application Serial No. 35/519,751.

July to September 2023" as a basis to avoid prior art made or sold in that three month period under 35 U.S.C. § 102(b)(2)(B).

29.     The D093 Patent claims, "[t]he ornamental design for study carrel as shown and described," and illustrates the following:



| D093 Patent, Fig. 1.1 | D093 Patent, Fig. 1.3 |



D093 Patent, Fig. 1.2

D093 Patent, Fig. 1.4

D093 Patent, Fig. 1.5

30.    The D093 Patent claim is invalid as non-enabled and indefinite because the at least Figure 1.5 of the D093 Patent is too blurry and unclear to determine the scope of the claim with reasonable certainty.

31.    The Privacy Shields and the Storage Study Carrel were publicly disclosed, publicly used, and sold and/or offered for sale before December 13, 2023, which is the effective filing date of the D093 Patent.

32.    In the eye of an ordinary observer, the resemblance of the design of the Privacy Shields and the Storage Study Carrel to that of the D093 Patent are such as to deceive an ordinary

observer to suppose the Privacy Shields and the Storage Study Carrel are the design claimed by the D093 Patent.

33. In the eye of an ordinary observer, giving such attention as a purchaser usually gives, the designs of the Privacy Shields, the Storage Study Carrel, and that of the D093 Patent are substantially the same.

34. There are no identifiable differences between the ornamental appearance of the Privacy Shields and that of the D093 Patent.

35. There are no identifiable differences between the ornamental appearance of the Storage Study Carrel and that of the D093 Patent claim.

36. Despite the substantial similarity between the D093 Patent and the Privacy Shields and/or Storage Study Carrel, Defendant requested Amazon to delist the Accused ASINs, which was tantamount to an injunction on the sales of the Plaintiff Products – a draconian remedy obtained without any hearing or consideration by Plaintiffs.

37. As shown above, the Plaintiff Products are virtually identical to the Storage Study Carrel, which is prior art to the D093 Patent and confusingly similar to the same, such that an ordinary observer would be induced to view the Storage Study Carrel as the design of the D093 Patent.

38. An ordinary observer tasked with comparing the Plaintiff Products to the D093 Patent and the Storage Study Carrel would be unable to find any similarities between the Plaintiff Products and the D093 Patent claim that is not also illustrated by the design of the Storage Study Carrel.

39. Since the illegal takedown of the Accused ASINs, Plaintiff Jianke has lost a total of $200,000.00 in sales revenue, lost two months of consumer reviews to add to its over 70 consumer reviews, and the inventory worth $110,901.20 had been destroyed on April 25. Jianke now faces imminent destruction of $60,848.27 worth of unsold inventory in the Plaintiff Products without judicial intervention by May 5, 2025.

10

40.     Since the illegal takedown of the Accused ASINs, Plaintiff HHB has lost a total of $150,000 in sales revenue, lost two months of consumer reviews to add to its over 350 consumer reviews, and faces imminent destruction of $199,431.34 worth of unsold inventory in the Plaintiff Products without judicial intervention by May 20, 2025.

41.     The calculatable and uncalculatable detriments caused by Defendant's illegal takedown of the Accused ASINs using the D093 Patent has caused irreparable damage to Jianke's brand and Jianke's sole means of commercialization of the Plaintiff Products and the source of its business incomes.  Barring a judgment in its favor, Plaintiff Jianke will be forced to go out of business and suffer losses due to the destruction of its non-infringing property caused by the misuse of an invalid U.S. Patent.

42.     The calculatable and uncalculatable detriments caused by Defendant's illegal takedown of the Accused ASINs using the D093 Patent has caused irreparable damage to HHB's brand and HHB's sole means of commercialization of the Plaintiff Products and the source of its business incomes.  Barring a judgment in its favor, Plaintiff HHB will be forced to go out of business and suffer losses due to the destruction of its non-infringing property caused by the misuse of an invalid U.S. Patent.

## COUNT I

### (Declaratory Judgment of Non-Infringement)

43.     Plaintiffs hereby reallege and incorporate all previously recited paragraphs *supra* as if fully set forth herein.

44.     Defendant has alleged that the Plaintiff Products infringe the claim of the D093 Patent.

45.     The Plaintiff Products are nearly identical to the prior art Storage Study Carrel.

46.     In the eyes of an ordinary observer giving such attention that purchasers of Plaintiffs' products, including the Privacy Shields, and the Storage Study Carrel would give, any alleged similarities between the Plaintiff Products and the claim of the D093 Patent would also be shared by the Storage Study Carrel.

47.    Plaintiffs are entitled to a declaratory judgment that the Plaintiff Products cannot infringe the D093 Patent either literally or under the doctrine of equivalents.

48.    Plaintiffs are entitled to such declaratory relief pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 et seq., in the form of a judgment, that Plaintiffs' products have not infringed and are not infringing upon any valid claim of the D093 Patent, have not contributed to and are not contributing to infringement of the any claim of D093 Patent, and have not induced and are not inducing infringement upon any claim of D093 Patent. Such a determination is appropriate at this time.

## COUNT II

### (Declaratory Judgment of Invalidity)

49.    Plaintiffs hereby reallege and incorporate all previously recited paragraphs *supra* as if fully set forth herein.

50.    The earliest effective filing date of the D093 Patent is December 13, 2023, although the applicant may be able to rely on a July 2023 date as a basis to avoid prior art under 35 U.S.C. § 102(b)(2)(B).

51.    According to Amazon.com, the Privacy Shields was first available, i.e., publicly known, used, and/or offered for sale, on Amazon as early as April 4, 2023.

52.    The Storage Study Carrel was publicly known, used, and/or offered for sale on Amazon as early as April 19, 2023.

53.    There are no identifiable differences in the design claimed in the D093 Patent and the design of the Privacy Shields or the Storage Study Carrel.

54.    In the eyes of an ordinary observer giving such attention that purchasers of Plaintiffs' products and the Storage Study Carrel would give, the ordinary observer would confuse the designs claimed by the D093 Patent with the design of the Storage Study Carrel:

| D093 Claim | Prior Art Storage Study Carrel |
|---|---|
|  | |

| D093 Claim | Prior Art Storage Study Carrel |
|---|---|
| | |

55.     Plaintiffs are informed and believe, and on that basis allege, that the D093 Patent claim is invalid as anticipated by the prior art Privacy Shields and Storage Study Carrel.

56.     Plaintiffs are informed and believe, and on that basis allege, that the D093 Patent claim is invalid as obvious over the prior art Privacy Shields and Storage Study Carrel, because a designer of ordinary skill would have considered the claimed design of the D093 Patent to have been taught, suggested, or motivated by the design of the Privacy Shields and Storage Study Carrel either on its own or in view of any of the prior art made of record in the file history of the D093 Patent and combinations thereof.

57.     Plaintiffs are entitled to such declaratory relief pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 et seq., in the form of a judgment, that the D093 Patent is invalid.  Such a determination is appropriate at this time.

<u>COUNT III</u>

**(FEDERAL FALSE DESCRIPTION**

**LANHAM ACT SECTION 43(a), 15 U.S.C. §1125)**

58.     Plaintiffs hereby reallege and incorporate all previously recited paragraphs *supra* as if fully set forth herein.

59.     Defendant engaged in unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. Section 1125(a)(1) by falsely and in bad faith representing to Amazon that Plaintiffs' Products offered under the Accused ASINs infringed the D093 Patent despite knowing that the D093 Patent was either non-infringed and/or invalid due to the prior public sales and/or

uses of the prior art Privacy Shields and the Storage Study Carrel, which were also available to Defendant on the Amazon.com platform before the earliest effective filing date and earliest publication of Defendants' own D093 Patent-practicing products.

60.     Amazon was actually deceived by Defendant's bad faith representations of infringement and the deception actually did influence purchasing decisions in that it caused Amazon to delist the Accused ASINs on February 19th,2025.

61.     Jianke's delisted products became unavailable to purchase on Amazon which is a primary national marketplace for interstate commerce. Therefore, Defendant caused, directed, and intended that its false statement enter and go through interstate commerce to Amazon in order to harm Jianke's business.

62.     HHB's delisted products became unavailable to purchase on Amazon which is a primary national marketplace for interstate commerce. Therefore, Defendant caused, directed, and intended that its false statement enter and go through interstate commerce to Amazon to harm HHB's business.

63.     Defendant intended for Jianke's listings to be removed to limit, or eliminate entirely, Defendant's competition on Amazon.

64.     Defendant intended for HHB's listings to be removed to limit, or eliminate entirely, Defendant's competition on Amazon.

65.     Defendant's frivolous and spurious infringement complaints against Plaintiffs demonstrate Defendant's engagement in unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. Section 1125(a)(1) by falsely and in bad faith representing to Amazon that Plaintiffs' Products infringed the D093 Patent despite knowing that the D093 Patent is invalid and/or not infringed by the Privacy Shields and the Storage Study Carrel, which was publicly known, used, and offered for sale prior to the earliest priority date of the D093 Patent.

66.     As a result of Defendant's bad faith representations Jianke has suffered direct injury to its profits, products, sale rankings, reviews and reputation. Jianke is entitled to damages in an amount to be proven at trial including reasonable attorneys' fees and costs.

67.     As a result of Defendant's bad faith representations HHB has suffered direct injury to its profits, products, sale rankings, reviews and reputation. HHB is entitled to damages in an amount to be proven at trial including reasonable attorneys' fees and costs.

68.     As a result of Defendant's bad faith representations, Plaintiffs face the immediate prospect of having their products permanently delisted and inventory destroyed which would result, as intended by Defendant, in direct injury to Plaintiffs' profits, products, sale rankings, reviews and reputation. Plaintiffs are entitled to damages in an amount to be proven at trial including reasonable attorneys' fees and costs.

69.     Plaintiffs are also entitled to immediate injunctive relief in order to preserve the status quo and prevent Defendant's baseless and malicious efforts to have Amazon destroy and/or further delist any of Plaintiffs' Products and other ASINs for the same.

<u>COUNT IV</u>

**(Common Law Tortious Interference with Contractual Relations)**

70.     Plaintiffs hereby reallege and incorporate all previously recited paragraphs *supra* as if fully set forth herein.

71.     Jianke has a valid and existing contract with Amazon to sell their products at issue listed under ASIN B0CJR2XNKN, B0CJR4TTDK, and B0DJQZYWGV through Amazon.com.

72.     HHB has a valid and existing contract with Amazon in order to sell their products at issue listed under ASIN B0BZ7P8TJ8, B0BZVVLBQY, B0D53G3V8H, B0D53S47TP, B0CPPV5T6N, and B0CPPSFDQS through Amazon.com.

73.     Plaintiffs are informed and believe, and on that basis allege, that Defendant knew or should have known as an Amazon seller itself that the availability of Jianke's ASIN on Amazon.com must have required Jianke to have had one or more contractual relationships with Amazon.

74.     Plaintiffs are informed and believe, and on that basis allege, that Defendant knew or should have known as an Amazon seller itself that for Jianke to maintain its ASINs on

Amazon.com, Jianke must have had contractual relationships with consumers using the Amazon.com platform.

75.    Plaintiffs are informed and believe, and on that basis allege, that Defendant intentionally interfered with Jianke's contractual relationships and furthermore knowingly and intentionally asserted materially false allegations of patent infringement against Jianke to have Jianke's ASINS and products associated therewith to be removed and eliminate Jianke's lawful competition via Amazon.com.

76.    As a result of Defendant's improper acts Jianke's listings were removed from Amazon.

77.    Plaintiffs are informed and believe, and on that basis allege, that Defendant knew or should have known as an Amazon seller itself that the availability of HHB's ASIN on Amazon.com must have required HHB to have had one or more contractual relationships with Amazon.

78.    Plaintiffs are informed and believe, and on that basis allege, that Defendant knew or should have known as an Amazon seller itself that in order for HHB to maintain its ASINs on Amazon.com, HHB must have had contractual relationships with consumers using the Amazon.com platform.

79.    Plaintiffs are informed and believe, and on that basis allege, that Defendant intentionally interfered with HHB's contractual relationships and furthermore knowingly and intentionally asserted materially false allegations of patent infringement against HHB to have HHB's ASINS and products associated therewith to be removed and eliminate HHB's lawful competition via Amazon.com.

80.    As a result of Defendant's improper acts HHB's listings were removed from Amazon.

81.    Defendant continues its efforts to harm Plaintiffs through its frivolous and spurious infringement complaints against Plaintiffs by claiming their Plaintiff Products infringed upon the claim of D093 Patent despite knowing that the D093 Patent was invalid and/or not infringed.

17

82.     Plaintiffs have suffered direct, proximate and foreseeable damages and continue to suffer direct, proximate and foreseeable damages.

83.     Defendant's efforts to have Plaintiffs' Products delisted through improper means was and is unlawful, fraudulent and based on fraudulent activity before a Federal agency.

84.     By reason of Defendant's acts, Plaintiffs are entitled to equitable remedies and damages in an amount to be proven at trial.

## COUNT V

### (Intentional Interference with Prospective Economic Advantage)

85.     Plaintiffs hereby reallege and incorporate all previously recited paragraphs *supra* as if fully set forth herein.

86.     Plaintiffs' ongoing business relationship with Amazon included the selling of the Plaintiff Products now delisted because of Defendant's frivolous and spurious infringement complaint; i.e., each of the Accused ASINs.

87.     Plaintiffs' ongoing business relationship with Amazon includes the current sale of Plaintiff Products which Defendant claims are infringing the non-infringed and invalid D093 Patent.

88.     Defendant had and continues to have full knowledge of the ongoing relationships and prospective future business arrangements between Plaintiffs and Amazon regarding Plaintiffs' Products.

89.     Defendant intentionally and knowingly made fraudulent assertions of patent infringement, which ultimately caused Amazon to remove the Accused ASINS, thus denying the future and ongoing business relationship between Plaintiffs and Amazon.

90.     Defendant knew that the removal of Jianke's product listings and HHB's product listings via delisting of the Accused ASINS would harm Jianke's business and HHB's business, respectively, and would benefit Defendant due to it having less competition.

91.     Defendant intended to harm Jianke by fraudulently convincing Amazon to remove Jianke's ASINs and the products associated therewith.

92.    Defendant intended to harm HHB by fraudulently convincing Amazon to remove HHB's ASINs and the products associated therewith.

93.    Defendant's use of Amazon to delist Plaintiffs' Products constituted willful and fraudulent efforts to harm Plaintiffs, diminish Plaintiffs' Amazon sales, rankings, review, reputation, goodwill, and standing in the market.

94.    Defendant knows or should have known as an Amazon seller itself that the removal of Jianke's and HHB's product listings would harm Jianke's and HHB's businesses and would benefit Defendant due to it having less competition.

95.    Defendant intended to harm Plaintiffs by fraudulently initiating infringement complaints with Amazon against Plaintiffs in the effort to convince Amazon to remove the Accused ASINs.

96.    Defendant has no privilege or justification in interfering with Plaintiffs' relationships with Amazon.

97.    As a result of Defendant's interference with Plaintiffs' ongoing and future relationship with Amazon, Jianke and HHB has each incurred damages and will continue to incur damages.

98.    Damages incurred, and to be incurred by Jianke, include fees and costs associated with Amazon product storage fees. Jianke's ASINs delisted by Amazon, B0CJR2XNKN, B0CJR4TTDK, and B0DJQZYWGV, reflect 3,353 units existing inventory stored by Amazon. Fulfillment by Amazon ("FBA") charges a monthly storage fee to sellers. The fee to store the 3,353 units reflected by the above ASINs is approximately $1613.78 a month. There is a fee associated with removing products stored by Amazon. The removal fee for the delisted products associated with Jianke's ASINS will be $35,099.43. There is a cost associated with restocking Amazon warehouse with previously removed product. The cost to resupply the delisted products associated with Jianke's ASINS to FBA for the 3,353 units is approximately $51,275.62. In the event of Amazon destroying Jianke's inventor of delisted products associated with Jianke's ASINS, the value of the destroyed inventory would be $171,749.47.

99.     Damages incurred, and to be incurred by HHB, include fees and costs associated with Amazon product storage fees. HHB's ASINs delisted by Amazon, B0BZ7P8TJ8, B0BZVVLBQY, B0D53G3V8H, B0D53S47TP, B0CPPV5T6N, and B0CPPSFDQS, reflect 3,766 units existing inventory stored by Amazon. Fulfillment by Amazon ("FBA") charges a monthly storage fee to sellers. The fee to store the 3,766 units reflected by the above ASINs is approximately $1,943.86 a month. There is a fee associated with removing products stored by Amazon. The removal fee for the delisted products associated with HHB's ASINS will be $40,364.92. There is a cost associated with restocking Amazon warehouse with previously removed product. The cost to resupply the delisted products associated with HHB's ASINS to FBA for the 3,766 units is approximately $60,801.69.  In the event of Amazon destroying HHB's inventor of delisted products associated with HHB's ASINS, the value of the destroyed inventory would be $19,9431.34.

100.    Thus, the damages to Plaintiffs because of Defendant's frivolous complaint using the invalid and non-infringed D093 Patent will result in the incurring removal fees, transport fees, and fees associated with transportation of the delisted products.

101.    The delisting of the Accused ASINs would result in an immediate and ongoing detrimental impact on Plaintiffs' ability to conduct business, remain profitable, and damage each of Plaintiffs' Products' rankings and reviews, loss of each Plaintiffs' goodwill and reputation on the Amazon marketplace. The damage to Plaintiffs should their products continue to be delisted as a result of Defendant's frivolous complaints based on the invalid and non-infringed D093 Patent is incalculable and irreparable.

102.    By reason of the foregoing, Plaintiffs have suffered direct, proximate and foreseeable damages in an amount to be proven at trial.

## COUNT VI

### (Unjust Enrichment)

103.    Plaintiffs hereby reallege and incorporate all previously recited paragraphs *supra* as if fully set forth herein.

104.    As a result of Defendant's actions as stated herein Defendant has been unjustly enriched and, at the same time, is causing a loss of revenue to Jianke to Jianke's detriment.

105.    As a result of Defendant's actions as stated herein Defendant has been unjustly enriched and, at the same time, is causing a loss of revenue to HHB to HHB's detriment.

106.    Defendant is currently engaged in efforts to further damage Jianke and HHB by fraudulently asserting infringement claims against each of them using the invalid and/or non-infringed D093 Patent to reduce their ability to compete with Defendant on the Amazon marketplace and elsewhere online.

107.    Defendant has accepted and retained the benefit of the unjust enrichment from its wrongful conduct.

108.    There is no express, written contract between Plaintiffs and Defendant that would allow for Defendant to retain the benefit of the unjust enrichment from its wrongful conduct as described herein.

109.    Jianke and HHB are entitled to recover from the Defendant its unjust enrichment including gains, profits, and advantages it has obtained because of Defendant's wrongful conduct. Jianke and HHB are at present unable to ascertain the full extent of the gains, profits, and advantages Defendant has obtained by reason of Defendant's wrongful conduct.

110.    By reason of the foregoing, Jianke and HHB seek damages based on Defendant's unjust enrichment in an amount to be proven at trial.

**WHEREFORE**, Plaintiffs pray for judgment against Defendant as follows:

1.    For judgment in favor of Plaintiffs against Defendants on all claims.

2.    Declaring that Plaintiffs' products do not infringe any valid claim of D093 Patent.

3.    Declaring that the claim of the D093 Patent is invalid under one or more of 35 U.S.C. §§ 101, 102, 103, 112, and 171.

4.      Awarding Plaintiffs their reasonable attorneys' fees and costs, including costs for experts, pursuant to State and Federal law, including 35 U.S.C. § 285.

5.      Judgment that this case is exceptional and that the Defendant be ordered to pay all Plaintiffs' attorneys' fees associated with this action pursuant to 35 U.S.C. § 285.

6.      Order by this Court that Defendant must immediately revoke any complaints of infringement of the D093 Patent made to Amazon.com with respect to Plaintiffs.

7.      Enjoining Defendant temporarily, preliminarily, and permanently from making any future complaint regarding the D093 Patent against Plaintiffs and Plaintiffs' products and associated ASINs.

8.      Ordering Defendant to return to the Court with proof of compliance of this Order within seven (7) days of entry thereof, with a copy served on Plaintiffs' attorney.

9.      Awarding Plaintiffs damages due to Defendant's improper acts, doubled and/or trebled due to the willful and exceptional nature of the case.

10.     Awarding to Plaintiffs compensatory, general and special, consequential and incidental damages in an amount to be determined at trial.

11.     Awarding to Plaintiffs exemplary, punitive, statutory, and enhanced damages.

12.     Awarding pre- and post- judgment interest.

13.     Awarding Plaintiffs such other and further relief as this Court deems is just and proper.

May 8, 2025                                    Respectfully submitted,

                                    By:    /s/ Terry C. Frank
                                           Terry C. Frank, Esq. (VSB No. 74890)
                                           Jeffrey W. Truitt, Esq. (VSB No.
                                           TERRY FRANK LAW
                                           6722 Patterson Avenue, Ste. B
                                           Richmond, Virginia 23226
                                           P: 804.899.8089
                                           F: 804-899-8229
                                           terry@terryfranklaw.com
                                           jeff@terryfranklaw.com

22

By:    */s/ Joseph Farco*
       Joseph Farco, Esq.
       (*Pro hac vice* pending)
       BOCHNER PLLC
       1040 Avenue of the Americas, 15th F
       New York, NY 10018
       P: (646) 971-0685
       jfarco@bochner.law
       *Counsel for SHENZHEN JIANKE*
       *TECHNOLOGY CO., LTD. and*
       *SHENZHEN HUIHAIBANG TRADING CO.,*
       *LTD*